UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

CRIMINAL NO. 15-20009

vs.                                    HON. MARK A. GOLDSMITH

DARRELL N. EVANS, JR.,

Defendant.
_____/

## GOVERNMENT'S MOTION TO REVOKE BOND

Within months of his release from custody, Evans was arrested trying to kick in the door of a woman's apartment. He was trying to get inside because he needed his "bag" (with a kilo brick of heroin) back; but she wouldn't let him in. When officers arrested Evans and searched his truck, they found a large stack of cash and a loaded handgun. They also searched his phones, and found pictures and videos showing Evans used his minor son in his drug trafficking activities. These events and his history of non-compliance show Evans is not a good candidate for bond regardless of the standard or burden. So certainly here—i.e., where he carries the burden and must establish, by clear and convincing evidence, he is not a danger—Evans should be detained. Undersigned

1

counsel explained the basis for this motion and the request for relief to

defense counsel and on the record at the hearing on December 2, 2019,

and defense counsel expressly denied the requested relief.

## BACKGROUND

**A.      Evans tries to obtain 10 kilos of cocaine, but is arrested, pleads guilty, and is sentenced to five years in custody.**

In July 2014, a confidential informant told federal investigators in

El Paso, Texas that he was aware of a person—a "D" from Detroit, who

was eventually identified as the defendant, Darrell Evans—who wanted

to purchase kilos of cocaine. (PSR, ¶10). The informant also had a phone

number for "D," which an undercover agent or "UC" (posing as a drug

supplier) then called. (*Id*.). They set up a meeting in Texas. (*Id*.).

In August 2014, Evans flew to El Paso for this in-person meeting

with the UC. (*Id*., ¶11). During it, the UC agreed to sell Evans

10 kilograms of cocaine for $250,000 once Evans deposited $10,000 into

a bank account for transportation of the drugs. (*Id*.).

Evans (or members of his drug trafficking organization) made

these deposits. (PSR, ¶12). So the UC and Evans set up a meeting in

September 2014, outside of Detroit, for the exchange of the drugs and

money. (*Id*.). At this meeting, Evans did not bring all of the cash, so the

UC agreed to "front" him three kilos of cocaine. (*Id.*, ¶13). Evans took possession of the drugs, and was arrested. (*Id.*, ¶14).

Evans was indicted with two drug trafficking offenses that carried mandatory ten-year sentences (1) conspiring to distribute at least five kilos of cocaine, and (2) possessing at least five kilos of cocaine intending to distribute it, both of which). (R.1: Indictment, 1-2). He eventually pleaded guilty to a lesser charge, possession with intent to deliver at least 500 grams of cocaine, which carried a mandatory five-year sentence. (R.27: Plea Agreement, 63).

Evans' guidelines were 60-71 months. (*Id.*, 64; PSR, ¶65). Judge O'Meara sentenced him to 60 months in custody, the mandatory minimum, and four years of supervised release. (R.32: Judgment, 98-99). Evans began that term of supervised release on August 19, 2019.

**B.   Evans is released from custody and, within two months, violates his supervised release by selling drugs.**

On October 20, 2019, the Sterling Heights Police Department ("SHPD") received a call from a woman (the "Witness") who said that Evans left a bag at her apartment and she believed it contained drugs. Two SHPD officers drove to the Witness's apartment, spoke with her,

and collected the drugs—more specifically, a 981-gram brick of heroin—that was inside a shopping bag.

Later that day, the Witness again called SHPD because Evans was trying to get into her apartment. Officers arrived and found Evans trying to get inside, having attempted to kick the door down and get in through the window:



Evans was arrested. His vehicle, a Dodge Ram pick-up, was impounded. Officers then searched the truck and found, in the center console, a handgun and a large amount of cash.



At his arrest, officers also took Evans' two cell phones and later obtained search warrants for them. The information on the phone helps explain what happened leading up to Evan's October 20th arrest. For instance, less than two weeks before, on October 8, 2019, Evans sent two text messages about $27,500 that was given to someone:

| *If my pops ask you about that money tell him you have them 27500* |
|---|
| *You gave them 27500 don't tell him we took that money out bro* |

A few days after these messages, on October 10th and 11th, the phone user (Evans) took "selfie" videos and photos flashing a large amount of cash—one on a couch, and the other in a vehicle showing a minor—likely Evans's son—counting cash.



This vehicle's interior matches Evans's pick-up, as observed from the SHPD photos above. And the photo of the money on the couch matches another picture of the couch on the phone—especially the distinctive diamond pattern, see zoomed in photo on right—which the probation officer confirmed was Evans's residence:



## ARGUMENT

A defendant who has a pending supervised release violation is permitted to be on bond only if he, the defendant, can establish "by clear and convincing evidence" that he is neither a flight risk nor a danger to the community. Fed. R. Crim. P. 32.1(a)(6) (citing to 18 U.S.C. § 3143(a)(1)). A defendant's continued drug trafficking is one of the dangers that the Bail Reform Act seeks to protect the community from. *See, e.g., United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)

(stating that "[t]he risk of continued narcotics trafficking on bail constitutes a risk to the community").

Throughout his life, Evans has shown a consistent pattern of doing what he wants—whether it is against the law or even when a judge has specifically told him not to do it. For instance, despite continued arrests, convictions, and punishments, he continues to drive without permission. *See* PSR ¶32 (detailing 2013 arrest for driving on a suspended license (DWLS) where he had eight suspensions); *id.* ¶34 (April 2014 arrest and October 2014 conviction for DWLS); *id.* ¶35 (June 7, 2014 arrest and February 2015 conviction for DWLS); *id.* ¶42 (June 23, 2014 arrest for DWLS); *id.* ¶43 (August 20, 2014 arrest for DWLS); *id.* ¶44 (July 14, 2015 arrest for DWLS); *see also* PSR ¶ 31 (when police officer tried to make traffic stop, Evans "continued to flee from police at a speed more than twice the legal limit"); *id.* ¶ 34 (Evans failed to appear for scheduled sentencing).

In addition, every time Evans was given probation, he violated the terms. *See* PSR ¶¶ 31, 33. Indeed, in this case, he was out of prison only for a few months and was then arrested trying to break into an apartment, and he had been in possession of a gun, a brick of heroin,

and thousands of dollars in cash. To make matters worse, Evans appears to be using his minor son in his drug trafficking activites—having him count his drug money (as depicted in the photo above, and in a separate video on his phone).

In short, Evans is a danger to the community because there are no conditions of bond that will stop him from selling drugs. The potential consequences don't seem to matter to him. And neither a tether nor home confinement will prevent him from this behavior. *See, e.g., United States v. Velasquez*, No. CR-13-70280, 2013 WL 1195708, at *3 (N.D. Cal. Mar. 22, 2013) ("Placing Defendant on house arrest and electronic monitoring will not prevent him from selling . . . drugs from his home.").

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/Steven P. Cares*
STEVEN P. CARES
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
steven.cares@usdoj.gov
313.226.9139

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on **December 4, 2019**, I electronically filed the

foregoing paper with the Clerk of the Court using the ECF system which

will send notification of such filing to all attorneys of record.

<u>s/Steven P. Cares (P68503)</u>
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
Phone:  (313) 226-9139
E-mail: <u>steven.cares@usdoj.gov</u>